FILED

SEP 11 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MATTHEW RYAN SEXTON,                           Civil No. 06-209-AC

      Petitioner,                      FINDINGS AND RECOMMENDATION

   v.

MIKE COZNER, Superintendent
MacLaren Youth Correctional Facility

      Respondent.


    MARK BENNETT WEINTRAUB
    Office of the Federal Public Defender
    151 West Seventh Avenue, Suite 510
    Eugene, OR  97401

      Attorney for Petitioner

    JOHN KROGER
    Attorney General
    JACQUELINE SADKER
    Assistant Attorney General
    Oregon Department of Justice
    1162 Court Street, NE
    Salem, OR  97301

      Attorneys for Respondent


   1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, in custody of the Oregon Department of Corrections, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. Petitioner challenges his sentencing for two counts of Murder upon his pleas of guilty. He alleges ineffective assistance of trial counsel. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#1) should be denied and this proceeding dismissed, with prejudice.

## BACKGROUND

In 1998, when Petitioner was seventeen, he was indicted on four counts of Aggravated Murder with a Firearm in the deaths of his father and mother. Petitioner confessed to shooting his parents and he led police to the locations where he had left the bodies. He later recanted, claiming his younger brother shot his parents and that his confession was to protect his brother. Following Petitioner's recantation, counsel arranged for Petitioner to take a polygraph, but Petitioner failed it. Despite counsel informing Petitioner the polygraph was not admissible and his recantation was a plausible defense, Petitioner confessed anew during the defense's psychological evaluation.

Plea negotiations led to the Aggravated Murder charges being reduced and Petitioner pleading guilty to two counts of intentional Murder, with the issue of consecutive versus concurrent sentencing reserved for the court following argument. Counsel hired a

2 - FINDINGS AND RECOMMENDATION -

nationally known expert on parricide who recommended Petitioner's allegations of abuse by his father be presented as a mitigating factor supporting concurrent terms of imprisonment. Counsel also met with the family on several occasions and understood them to support concurrent sentencing, until the issue of abuse as a mitigating factor was raised. At the sentencing hearing, a number of family members spoke in favor of consecutive sentencing, possibly in response to Petitioner's allegations of abuse. The sentencing court imposed two consecutive life terms of imprisonment under Ballot Measure 11, with a minimum of twenty-five years each without the possibility of parole.

Petitioner filed a direct appeal, challenging the constitutionality of consecutive sentencing under Ballot Measure 11, as applied to him. (Respt.'s Ex. 104.) The Oregon Court of Appeals affirmed the sentencing court without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 108, 107.)

Petitioner filed for post-conviction relief ("PCR"), raising seven claims of ineffective assistance of counsel, and two claims alleging his pleas of guilty were not knowingly, intelligently and voluntarily made. (Respt.'s Ex. 109, 4-5.) He contended he pled guilty to the murders to make his family happy and to protect his younger brother, whom he alleged committed the murders. The PCR trial court denied relief, issuing extensive written findings. (Respt.'s Exs. 125, 126.) Petitioner appealed, but the Oregon

Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  (Respt.'s Exs. 132, 131.)

In the instant petition, Petitioner raises six grounds for relief:  Ground One - Actual Innocence; Ground Two - Inadequate Legal Assistance; Ground Three - Inadequate Investigation; Ground Four - Involuntary Guilty Plea; Ground Five - Illegal Search and Seizure; Ground Six - Interrogation under Duress.  Petitioner's memoranda (#60, #64) present arguments alleging four instances of ineffective assistance of counsel.  For clarity, this Court will refer to the claims argued in Petitioner's memoranda as follows:
- Ground Two (A): ineffective assistance of counsel when counsel disclosed Petitioner's confidential written account of events;
- Ground Two (B): ineffective assistance of counsel when counsel failed to advise Petitioner that his family members were likely to favor consecutive sentencing;
- Ground Two (C): ineffective assistance of counsel when counsel failed to file a motion to suppress evidence;
- Ground Three (A): ineffective assistance of counsel when counsel failed to investigate Petitioner's claims of innocence and his family's position on sentencing.

Respondent asserts Petitioner is not entitled to relief on claims he does not argue because he fails to meet his burden of showing he is entitled to habeas relief.  (#65, Response at 6.)

Respondent also asserts Ground Two (A), is procedurally defaulted. (*Id.*)

## DISCUSSION

### I.  **Unargued and Procedurally Defaulted Claims**

Pursuant to 28 U.S.C. § 2248, "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." This Court has reviewed the record and finds Petitioner is not entitled to relief on the grounds for relief not argued in the memoranda and on the grounds for relief Respondent asserts are procedurally defaulted, with the exception of Ground Three (A) which is discussed in section II.

Before a federal court may consider granting habeas corpus relief, a state prisoner must have exhausted all available state court remedies either on direct appeal or through collateral proceedings. *See* 28 U.S.C. § 2254 (b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A state prisoner satisfies the exhaustion requirement by fairly presenting his claims to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v.* Reese, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004); *Castillo v. McFadden*, 370 F.3d 882, 886 (9th Cir. 2004). A claim is fairly presented when the state court is apprised of the facts and legal theory upon

which the claim is premised. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). In Oregon, the Oregon Supreme Court is the highest state court with jurisdiction to hear post-conviction claims in satisfaction of the exhaustion requirement. *See* Or. Rev. Stat. 138.650 (2005).

A state prisoner procedurally defaults federal claims if he fails to raise them as federal claims in state court or is barred from doing so under applicable state procedural rules. *O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Federal habeas review of procedurally defaulted claims is precluded unless the prisoner can show both "cause" for the procedural default and actual prejudice, or the prisoner demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750.

Petitioner has not met his burden of showing he is entitled to federal habeas relief on the claims he does not argue. Moreover, Petitioner makes no attempt to excuse the procedural default of a number of these claims and, thus, habeas review is precluded. Accordingly, habeas relief as to the claims presented by Petitioner as Ground One, Ground Three (excepting Three (A)), Ground Four, Ground Five, and Ground Six, should be denied.

In Ground Two (A) Petitioner contends it was deficient

representation for counsel to disclose a confidential note Petitioner had written to counsel. Although he argues this claim in his memorandum, Petitioner did not raise this claim in the state PCR proceedings. (*See* Respt.'s Ex. 109 at 4-6.) Therefore, he did not exhaust state remedies and, because the time for doing so has passed, the claim is procedurally defaulted. Petitioner does not attempt to excuse the default, and accordingly, habeas review as to Ground Two (A) is precluded.

In sum, habeas relief should be denied as to the claims presented in Ground One, Ground Two (A), Ground Three - except Three (A), and Grounds Four, Five, and Six, because Petitioner has failed to argue the claims and show he is entitled to habeas relief, and he has failed to excuse procedural default.

## II. **The Merits**

### A.   Standards

A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he demonstrates that the state court's adjudication:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d). The Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the

state court decisions under review. *Williams v. Taylor*, 529 U.S. 362, 386-89 (2000)("state court judgments must be upheld unless, after the closest examination of the state court judgment, a federal court is firmly convinced that a federal constitutional right has been violated.").

A state court decision is "contrary to" clearly established federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams,* 529 U.S. at 388.  An "unreasonable application" of clearly established Supreme Court law occurs when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the . . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005)(citing *Williams,* 529 U.S. at 413). "'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974.

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002).  The decision of the state PCR trial court is the basis for review in this proceeding.

In reviewing a state court decision, "[A] federal court may not second-guess a state court's fact-finding process unless, after

review of the state-court record, it determines that the state
court was not merely wrong, but actually unreasonable." *Taylor v.
Maddox*, 366 F. 3d 992, 999 (9th Cir. 2004).   This is a standard
that will be met in few cases.   *Id.* at 1000.   When unchallenged,
State court determinations of factual issues "shall be presumed to
be correct."   28 U.S.C. §2254(e)(1); *Miller-el v. Cockrell*, 537
U.S. 322, 340 (2003).   A Petitioner may rebut the presumption of
correctness with clear and convincing evidence.   *Id.*

   A federal claim of ineffective assistance of counsel requires
the petitioner to prove his counsel's performance fell below an
objective standard of reasonableness and that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.   *Bell v. Cone*,
535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland
v. Washington*, 466 U.S. 668, 687-88 (1984).   This standard also
applies to ineffectiveness claims in the context of guilty pleas,
with the petitioner required to show "that there is a reasonable
probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial." *Hill v.
Lockhart*, 474 U.S. 52, 57-59 (1985).   A bare allegation that a
petitioner would not have pleaded guilty if he had known all the
consequences of the plea is not sufficient to establish prejudice
under the ...test." *Lambert v. Blodgett,* 393 F.3d 943, 958 (9th
Cir. 2004) (citing *Riley,* 122 Wash.2d at 782, 863 P.2d 554).   A

9 - FINDINGS AND RECOMMENDATION -

petitioner's failure to prove either the performance prong or the prejudice prong will cause the claim to fail. *Strickland*, 466 U.S. at 697.

B. <u>Analysis</u>

Following Petitioner's state PCR trial proceedings, the PCR court characterized the primary issue as "Petitioner's claim regarding the judgment of consecutive sentences on two counts of Murder." (Respt.'s Ex. 125 at 3-4.) Petitioner claimed he pled guilty with the belief that he would obtain concurrent sentences, despite language in the plea petition specifying the court could impose either consecutive or concurrent sentences. (*Id.* at 4.) The PCR court considered the issue "in the context of the plea negotiations." (*Id.*) In a detailed opinion letter, the PCR court noted, in relevant part:

> The 'deal' was that the aggravated murder charges were dropped (Ex. 105, paragraph 9) in return for Petitioner pleading guilty to two (2) counts of murder with both sides free to recommend an appropriate sentence to the judge. If there had been an agreement that was intended to bind the judge in sentencing, it would have been on the plea petition (Ex. 105). The District Attorney gave up the sentencing option of life without parole for the pleas to intentional murders with the right for the state to continue to convince the court that the murder sentences should be consecutive (Ex. 1, 105). Trial counsel expressed that:
>
>> "Once the District Attorney agreed to drop the aggravated murder charges and allow [Petitioner] to plead to two counts of intentional murder our every effort was to convince the Court to make the sentences concurrent so that he would have a chance for parole in 25 years." (Ex. 1, pg. 1).

10 - FINDINGS AND RECOMMENDATION -

Petitioner argued in his Trial Memorandum that he anticipated a recommendation by the family for concurrent sentences. Among other contentions, the emphasis in oral argument at trial herein was that trial counsel was inadequate by his representation that the family would support concurrent sentences. Indeed trial counsel reports that family member Bruce Sexton advised trial counsel a short time before sentencing that he and wife Gloria would support concurrent sentences. (Ex. 1, pg.2) (And, as it happened, after Petitioner claimed prior abuse from his father, and quite possibly because of that claim, there was opposition expressed by family members to concurrent sentences.) Of note, is the fact that the family could not corroborate the only direct evidence of physical abuse of Petitioner, Petitioner's own statements. (Ex. 1, pg.2) Whether Petitioner relied on an expectation of a certain recommendation for sentence by the family or not, Petitioner understood that the sentence was within the discretion of the trial judge. (Ex. 105: "I know that the court is not bound by sentencing recommendations and the sentence is up to the court only. The court can impose multiple sentences to run together (concurrent) or one after the other (consecutively).") Thus, even if there was some misapprehension about the anticipated family recommendation, such would not be sufficient as a valid basis to find trial counsel to be constitutionally inadequate.

* * *

Trial counsel gave the trial court every reasonable opportunity to consider determining that the sentence should run concurrently. The brief filed at sentencing [ ] presented at length in a careful detailed approach, the reasons for the Court to allow concurrent sentences. (Ex. 107). The Court did not follow the careful researched advise [sic] of trial counsel or the testimony of the experts. The surprise expressed by counsel and argued by Petitioner, is not an adequate basis to find a constitutional violation based upon acts or failures of trial counsel which acts and failures had any reasonably expected affect on the outcome of this case. Although Petitioner recanted his admission of guilt for a period of time and blamed his brother, in the end (despite advise [sic] from counsel otherwise), following failure of a polygraph exam, Petitioner "went back to his original confession during his interview with defense

psychologist Robert Stanulis." (Ex. 112, pg. 4, line 7-8).    The plea bargain followed that position by Petitioner:  "I took the life of my father and mother." (Ex. 105, par. 15).

> Likewise, even if this court could somehow find that counsel was inadequate, it is not reasonable to determine that such had any potential for producing a different result.    This Court finds that Petitioner did not actually believe that he necessarily would get concurrent treatment based upon representations of trial counsel. In fact, as stated, convincing the Court was the job Petitioner and trial counsel had anticipated.  This Court determines that Petitioner reasonably would have changed his plea, regardless.   To the extent Petitioner claims otherwise, it is not credible.  As reflected above, it is not   reasonable  to  rely  on  an  expectation  of  a recommendation of the family (or even an expectation of counsel) as having any ultimate affect on the trial judge's decision, and Petitioner did not actually rely to his detriment here.  Petitioner fails to meet his burden of proof."

(*Id.* at 4-5.)  The PCR court did not find Petitioner's assertion that  trial  counsel  represented  he  would  receive  concurrent sentencing credible.  (*Id.* at 5 n.1)  The PCR court also found testimony from family members about Petitioner's peaceful nature, his frequently taking the blame for his brother's misdeeds, and that  trial  counsel  had  advised  them  sentences  would  run concurrently, insufficient to establish that trial counsel was inadequate or that "all of it collectively would reasonably have made any difference in the trial judge's sentence." (*Id.* at 6.)

The PCR court issued a Findings of Fact, Conclusions of Law which incorporated the findings and conclusions from its Opinion Letter, (Respt.'s Ex. 126 at 5-6), and set forth, in relevant part, the following additional findings:

12 - FINDINGS AND RECOMMENDATION -

5.  The night of the murders, police officers noticed the two Sexton family vehicles being driven down a rural road in a very erratic fashion.  The police stopped both vehicles and found petitioner and his younger brother driving them.  The officers asked the two boys separately why they were driving erratically and attempting to elude police officers in the middle of the night.  Each boy told a different story.  The officer, walking around the vehicles, noticed a stream of what he believed to be blood swirling down onto the bumper from the tailgate of the [ ] pickup.  The officer also observed the .22 caliber rifle lying in plain view on the passenger seat.  The boys gave conflicting stories as to how blood could have gotten into the truck.  The officer decided that he needed to contact the parents of the two boys.

Dallas police officers called at the Sexton home and realized that a violent incident had occurred.  They saw some blood, furniture strewn about in one of the rooms, and the floor of the deck had been freshly washed and bleached down.

Petitioner was taken into custody, advised of his constitutional rights via *Arizona v. Miranda*, and soon confessed to having murdered both his parents. Petitioner agreed to lead officers to the place where he had disposed of the bodies.

6.  During counsel's representation of petitioner, petitioner proclaimed his innocence, declaring that he had confessed only to protect his younger brother who was the one who shot and killed their parents.

7.  Trial counsel investigated petitioner's claim of innocence.

* * *

8.  Petitioner also affirmed under oath that he knew that if he pled guilty, the maximum possible statutory sentences were two counts of intentional murder, with a penalty of life imprisonment with a twenty-five year minimum.  Petitioner stated that he knew that "the court can impose multiple sentences to run together (concurrently) or one after the other (consecutively)."

(Respt.'s Ex. 126 at 3-5.)  Absent Petitioner presenting clear and

convincing evidence to the contrary, the PCR court's findings are

presumed to be correct.  28 U.S.C. § 2254(e)(1).

    1)   <u>Ground Two (B)</u>: Failure to Advise Petitioner.

    Petitioner alleges that trial counsel was deficient in failing to advise him that his family was likely to favor consecutive sentencing.  In the context of the plea negotiations, the PCR court found Petitioner was fully aware of the potential for consecutive sentencing, and found any reliance on an expected sentencing recommendation from his family was not sufficient to establish counsel's representation was deficient.  The record supports these findings.  Petitioner clearly stated in his PCR deposition he knew the state was asking for consecutive sentencing, and that there was a possibility the court would impose consecutive sentencing. (Respt.'s Ex. 121 at 17-19.)

    In order to prevail on this claim, Petitioner had to show there was a reasonable probability that but for counsel's failure to advise him of his family's position on sentencing he would not have pleaded guilty and would have gone to trial.  *Hill*, 474 U.S. at 59; *Lambert*, 393 F.3d at 980.  The PCR court did not find credible Petitioner's assertions that he would not have pleaded guilty, and trial counsel's affidavit reveals family members were willing to support concurrent sentencing, at least until the issue of parental abuse was raised in mitigation at sentencing, after Petitioner changed his plea.  (Respt.'s Ex. 123 at 4-5.) Petitioner has not presented clear and convincing evidence to rebut

14 - FINDINGS AND RECOMMENDATION -

the PCR court's credibility determination, nor has he shown that the PCR court's rejection of this claim was contrary to, or an unreasonable application of clearly established federal law. Accordingly, habeas relief is not warranted.

    2)  <u>Ground Two (C)</u>: Failure to File a Motion to Suppress.

    Petitioner alleges that trial counsel was deficient in failing to file a motion to suppress evidence of the murders and his statements. The PCR Court found police had reason to stop Petitioner and his brother as they drove erratically on a rural road, that the officers observed blood dripping down the bumper of one of the vehicles and saw a rifle in plain view in the vehicle, that Petitioner and his brother gave conflicted stories to officers. (Respt.'s Ex. 126 at 4.) Petitioner was arrested, *Mirandized*, and confessed to murdering his parents. (*Id.*) The PCR court found "[t]rial counsel had no basis to file a motion to suppress petitioner's statements or arrest." (*Id.* at 6.) Petitioner contends this finding is objectively unreasonable, and argues evidence relating to the murders and his confession were the fruit of an illegal search of the vehicle he was driving. (#64, Suppl. Memo at 9-16.)

    Failing to file a meritorious motion may constitute ineffective assistance of counsel. *Moore v. Czerniak*, 574 F.3d 1092, 1101 (9th Cir. 2009). However, the PCR court found trial counsel had no basis to file a motion to suppress and, given the

record before the PCR court, it was not unreasonable for the court to do so.

"The Fourth Amendment 'right of the people to be secure in their persons ... against unreasonable searches and seizures' generally requires a law enforcement officer to have probable cause for conducting a search." *Safford Unified School Dist. No. 1 v. Redding*, 129 S.Ct. 2633, 2639 (2009). "'Probable cause exists where the facts and circumstances within [an officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed,' and that evidence bearing on that offense will be found in the place to be searched." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175-176, (1949)(internal quotation omitted)). *United States v. Ross*, 456 U.S. 798, 820-821, (1982), authorizes a search of any area of the vehicle in which the evidence might be found if there is probable cause to believe a vehicle contains evidence of criminal activity. *Arizona v. Gant*, 129 S.Ct. 1710, 1721 (2009). In Oregon, "[s]earches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence." *State v. Kock*, 302 Or. 29, 33, 725 P.2d 1285 (Or. 1986)(reiterating rule from *State v. Brown*, 301 Or. 268, 274, 721

16 - FINDINGS AND RECOMMENDATION -

P.2d 1357 (1986) recognizing automobile exception under the Oregon Constitution).

The record reveals Sheriff's Deputy Pinkerton ("Pinkerton"), stopped Petitioner and his 13 year old brother at approximately 12:30 a.m. after observing their vehicles crossing the center line and then going onto the shoulder, but that they initially attempted to elude the stop. (Respt.'s Ex. 119 at 4.)  Pinkerton ordered Petitioner and his brother to the ground when they both exited their vehicles, took them into custody, and advised them of their Miranda rights.  (*Id.*)  A second officer, Sergeant VanLaanen ("VanLaanen"), arrived to assist.  (*Id.*)

Petitioner could not adequately explain driving in the exact opposite direction of his stated destination – his grandmother's house – or why the boys took two vehicles.  He also gave differing accounts of why he and his brother left their home.  (*Id.* at 4-5.) After getting the answering machine at Petitioner's home, Pinkerton phoned Petitioner's grandmother who stated the parents should be home.  (*Id.* at 5)  Dallas Police officers were then asked to make contact with the parents at the home.  (*Id.*)  From prior contact with Petitioner, Pinkerton felt Petitioner may have stolen his parents' vehicles.  (*Id.*)

VanLaanen checked the vehicles for other occupants and weapons and found a rifle and a plastic garbage sack that appeared to contain clothes, in plain view in the extended cab of the pick-up

truck Petitioner had been driving. (*Id.* at 6-7.) In checking the vehicles for damage, Pinkerton noticed liquid leaking from under the tailgate and running down the bumper of the pick-up truck, which in his professional opinion was some sort of blood. (#42, Tr. of Sentencing Hearing, Vol. I at 7-10; Respt.'s Ex. 119 at 6.) The Dallas officers radioed they were unable to locate anyone at Petitioner's home, that a pick-up truck was in the driveway, a television was on, and it appeared some sort of struggle had occurred. (Respt.'s Ex. 119 at 6.) A second call to Petitioner's grandmother discounted the possibility the parents might have gone out. (*Id.*)

Petitioner could not give a plausible explanation of where his parents might be, and when asked about the blood on the pick-up he attributed it to a deer he claimed he and his father had hunted between 10 and 11 a.m. (*Id.* at 7.) The officers knew it was not hunting season and, based on VanLaanen's past experience as a tribal deputy, the explanation Petitioner gave of hunting out of season on Tribal land was not credible. (*Id.* at 6.) Questioned separately, Petitioner's brother stated his father had been at work all day and he and Petitioner had been together all day. (*Id.* at 6-8.)

The vehicles were inventoried in anticipation of their being towed as evidence of a crime. (*Id.* at 7.) The officers noted the rifle was a .22 caliber semi-automatic that appeared to have

recently been fired, they noted the content of the black bag, and found more blood in the bed of the pick-up and on the tailgate. (*Id.*)  Between 1:30 and 2:00 a.m., after further investigation, the Dallas officers reported that .22 caliber shell casings were in the home, and what looked like blood leading away from the house, and they observed that a violent incident had possibly occurred.  (#42, Tr. at 11-14; Respt.'s Ex. 119 at 7-8.)

Given the record, the Court rejects Petitioner's contention that probable cause to search the vehicle was lacking at the time the rifle and plastic bag were seized.  Officers made a lawful stop of two juveniles driving erratically, past midnight; the brothers gave inconsistent explanations for events and one provided information that the officers knew not to be true; the officers observed a rifle in plain view and blood leaking from the tailgate of the pick-up to the bumper; and the boys' parents could not be located at their home, despite the grandmother stating the parents were always home at that hour.  Petitioner has not presented clear and convincing evidence to rebut the PCR court finding that counsel had no basis for a motion to suppress, nor has he shown it was contrary to, or an unreasonable application of established federal law for the PCR court to deny relief on this claim.  Accordingly, habeas relief is not warranted.

/ / /

/ / /

19 - FINDINGS AND RECOMMENDATION -

3)    <u>Ground Three (A)</u>: Failure to Investigate.

Petitioner alleges counsel provided deficient representation when he failed to investigate Petitioner's claims of innocence and his family's position on sentencing.    The PCR Court found counsel had investigated Petitioner's claims of innocence, (Respt.'s Ex. 126 at 4), and had spoken with the family regarding sentencing. (Respt.'s Ex. 125 at 4.)    The record supports these findings.

Petitioner has not presented clear and convincing evidence to rebut the PCR court's findings, or shown that the PCR court's rejection of this claim was contrary to, or an unreasonable application of clearly established federal law.    Accordingly, habeas relief is not warranted.

<u>CONCLUSION</u>

For the reasons stated above, the Amended Petition for Writ of Habeas Corpus (#1) should be denied.

<u>SCHEDULING ORDER</u>

The Findings and Recommendation will be referred to a United States District Judge.    Objections, if any, are due September 25, 2009.    If no objections are filed, the Findings and Recommendation will go under advisement on that date.

/ / /

/ / /

20 - FINDINGS AND RECOMMENDATION -

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 11th day of September, 2009.

_____
John V. Acosta
United States Magistrate Judge